IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, | |
| Plaintiff, | 8:14CR367 |
| vs. | |
| TIMOTHY HICKMAN-SMITH, | ORDER |
| Defendant. | |

This matter is before the court on the Motion to Suppress Evidence (Filing No. 14) filed by defendant Timothy Hickman-Smith (Hickman-Smith). Hickman-Smith is charged in the Indictment with the September 11, 2014, possession with intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). Hickman-Smith seeks to suppress any evidence seized as a result of his detention in the area of a driveway at 5616 N. 29th Street, in Omaha, Nebraska, and the subsequent search of his locked vehicle by the Omaha Police Department (OPD).

The court held an evidentiary hearing on December 11, 2014. Hickman-Smith was present with his counsel, J. William Gallup. The United States was represented by Special Assistant U.S. Attorney David M. Wear. The court heard the testimony of OPD Detectives Ken Fortune (Detective Fortune) and Roman Hutton (Detective Hutton), and Sergeant Keith Williamson (Sergeant Williamson), Angela Harder (Ms. Harder), and Hickman-Smith. The court also received into evidence: a Google Maps map overview (Ex. 1), photographs of houses (Exs. 2-5), OPD tow policy (Ex. 6), OPD inventory policy (Ex. 7), a chain of custody report (Ex. 8), and a photograph of the front of a vehicle (Ex. 103). A transcript (TR.) of the hearing was filed on December 18, 2014 (Filing No. 36). There was no post-hearing briefing.

## FINDINGS OF FACT

Detective Fortune has been an officer with the OPD for seven years, with the last three years assigned to the North Gang Suppression Unit (TR. 11). Detective Fortune's duties include enforcing traffic laws, patrolling, and investigating criminal activities involving gang members, including common crimes, narcotics crimes, and weapons

offenses (TR. 11-12, 61, 63). Detective Fortune has participated in hundreds of narcotics investigations, including approximately twenty to thirty distribution or trafficking cases (TR. 12-13). Through his training and experience, Detective Fortune is familiar with the appearance and smell of raw and burnt marijuana (TR. 14-15). Detective Fortune has also received academy and field training about how to visually estimate the speed of vehicles (TR. 16). Detective Fortune was certified by having to estimate the speed of a hundred vehicles corroborated by radar, although he has not re-certified since being a member of the gang unit (TR. 16). Detective Hutton has been an officer with the OPD for ten years, the last four years in the North Gang Suppression Unit (TR. 76-77).

On September 11, 2014, at approximately 9:00 p.m., Detectives Fortune, Hutton, and Keri Orozco were on duty in an unmarked police vehicle equipped with emergency lights (TR. 17, 79). The detectives were wearing police raid vests marked with police insignia and duty belts containing tools, flashlights, firearms, and handcuffs (TR. 17-18). The detectives were traveling southbound on 27th Avenue a block or so north of Laurel Avenue (TR. 18). Detective Fortune observed a white pickup truck traveling west on Laurel Avenue (TR. 18). Detective Fortune testified the speed of the truck is what initially attracted his attention and estimated the truck was going at least double the posted speed limit of 25 miles per hour (TR. 18, 26-27, 79). The detectives determined the speed of the vehicle warranted further investigation and pursued the truck (TR. 18-19, 79). Without signaling a turn, the truck turned left onto 29th Street by cutting the corner and traveling southbound in the northbound lane for approximately one hundred feet (TR. 19-20, 41, 79). Detective Fortune estimated the truck was traveling at least forty miles per hour at that time (TR. 19). The truck abruptly turned, without signaling, into the driveway at 5618 North 29th Street, at which time Detective Fortune activated the emergency lights on the police vehicle (TR. 20-21, 26). The truck came to a rest against a Mustang already parked in the driveway, but did not cause any damage to either vehicle (TR. 21, 42, 81, 90-91). The driver of the truck immediately exited the truck (TR. 21, 24). The truck had no other occupants (TR. 28).

Detective Fortune exited the police vehicle and loudly said, "back in the car" (TR. 24). The driver did not respond (TR. 24, 81). Detective Fortune identified the driver for

the first time during the encounter as Hickman-Smith (TR. 24). Detective Fortune recognized Hickman-Smith from previous encounters including stops stemming from traffic violations, some of which Detective Fortune smelled marijuana in the vehicle, but a subsequent search did not reveal marijuana (TR. 58). Prior to the stop, Detective Fortune had information Hickman-Smith was suspected of gang and illegal drug and weapons activities (TR. 61, 63).

Detective Fortune again, more loudly, said, "back in the car" (TR. 24). Detective Fortune saw Hickman-Smith's hands were not a threat but he failed to respond to commands (TR. 24). When Hickman-Smith closed the truck's door, Detective Fortune smelled the truck's air draft, which contained the odor of raw marijuana (TR. 24, 39, 94). Hickman-Smith turned toward the house located at 5616 North 29th Street and took two running steps away from the officers (TR. 24-25, 29, 31). Detective Fortune ran after Hickman-Smith (TR. 29). Approximately ten feet from the truck, Detective Fortune grabbed Hickman-Smith's right arm, which he immediately pulled away (TR. 29). Detective Fortune grabbed the right arm again more firmly and said, "stop resisting and give me your other hand. Give me your other hand" (TR. 30). Hickman-Smith continued to ignore the commands, Detective Fortune said, "stop resisting or I'm going to have to put you to the ground" (TR. 30). As Hickman-Smith attempted to turn, the two men went in a circle struggling (TR. 30). Detective Fortune was able to talk Hickman-Smith into being handcuffed (TR. 30). Detective Fortune detected the odor of raw marijuana on Hickman-Smith's clothing when Detective Fortune placed Hickman-Smith in handcuffs and while standing with him (TR. 30, 34, 36, 39, 65). Detective Hutton also smelled the odor of raw marijuana on Hickman-Smith (TR. 81-82, 100-101, 106). Hickman-Smith was placed under arrest for the driving violations (TR. 38-39).

Without provocation, Hickman-Smith said, "You're not searching the car" (TR. 30). Detective Fortune responded, "yes, we are because I smell marijuana on your person" (TR. 30). Hickman-Smith explained he had been in a hurry to help his mom with an emergency regarding a fish tank (TR. 31).

After Hickman-Smith was placed in handcuffs, a male came from behind the house at 5616 North 29th Street and Hickman-Smith yelled, "Maynard, Maynard" (TR. 31). The man said, "hey, what is going on?" (TR. 32). In response, Hickman-Smith

3

asked, "hey, is mom okay" (TR. 32). The man, later identified as Jermaine, looked confused and said, "yeah" (TR. 32). An older woman, who Hickman-Smith identified as his mother, came to the entryway of the same house (TR. 32). Detective Fortune asked her if there was an emergency and she said, "yes" (TR. 33). Detective Fortune asked, "what is going on?" (TR. 33). The woman responded, "Oh, there was a death in the family" (TR. 33). Four other bystanders were observing the incident and told the woman not to talk to the officers and to go back into the house, which she did (TR. 33).

Detective Fortune asked Hickman-Smith for the keys to the truck to facilitate a search (TR. 34-35). Hickman-Smith stated the keys had been lost during the struggle (TR. 35). Hickman-Smith told Detective Hutton he had thrown the keys into the grass (TR. 81). After searching the area without finding the keys, the officers called another officer to open the truck without the keys (TR. 35-36). The officers decided to tow the truck because it was parked in the neighbor's driveway in such a way to block the driveway and the keys were not found (TR. 66-67, 85-86, 102).

After a search of the truck, Detective Hutton found three seeds, which appeared to be marijuana seeds, on the floorboard (TR. 37-38, 82-83, 87-88; Ex. 8). Detective Hutton also smelled the odor of raw marijuana in the truck (TR. 82). The officers also found eighteen separately wrapped packages of crack cocaine inside a Walmart bag, which was inside a Jimmy Dean sandwich box, which was inside a Nike shoe box on the passenger seat of the truck (TR. 38, 84-85). Detective Fortune found $175 in Hickman-Smith's right front pocket and $193 in Hickman-Smith's lower right pants leg pocket (TR. 39). No marijuana or marijuana paraphernalia were found on Hickman-Smith (TR. 64).

Sergeant Williamson arrived at the location of the traffic stop after the search had begun (TR. 115). Sergeant Williamson has been an officer with OPD for fourteen years and a sergeant for seven years (TR. 113). Sergeant Williamson is currently assigned to the North Gang Suppression Unit (TR. 113). Sergeant Williamson testified that had the truck not been searched based on the odor of marijuana it would have been towed based on the circumstances and location of the truck (TR. 116-117). Specifically, the truck, without keys, was blocking a driveway that did not belong to the truck's owner (TR. 116-117). Sergeant Williamson testified OPD's tow policy authorized OPD to tow

4

vehicles committing a parking violation (TR. 118). Additionally, the tow policy authorized officers to search containers in the subject vehicle (TR. 119).

Ms. Harder has been employed by the OPD crime lab since March of 2003 (TR. 123). Ms. Harder is a senior crime lab technician and a specialist in firearms and tool marks (TR. 123). Ms. Harder also has duties examining crime scenes (TR. 123). Ms. Harder arrived at the location of the traffic stop at 9:55 p.m., after the search had begun (TR. 126-127). Ms. Harder assisted with taking photographs and collecting evidence from the truck for approximately one-half hour (TR. 124). Ms. Harder observed the Nike shoe box with its contents and field tested one of the smaller bags opining it contained cocaine (TR. 125). Ms. Harder does not recall smelling the odor of marijuana in the truck and was not given any seeds to examine (TR. 126).

Hickman-Smith denies ever driving 65 miles per hour in the residential area indicated by the detectives (TR. 134, 136-137). Hickman-Smith testified he "couldn't been doing no more than 25 or 30" (TR. 147). Hickman-Smith also denies making any turns without signaling (TR. 137). However, Hickman-Smith admits he failed to use his turn signal when turning into the driveway (TR. 143). To explain his driving on the wrong side of the roadway, Hickman-Smith describes the area as essentially one-lane roads with cars parked on one side (TR. 134-135). Additionally, Hickman-Smith testified he has been parking his vehicles in the driveway next to his mother's house for approximately ten years with the neighbor's permission (TR. 135). Hickman-Smith testified he closed the door to the truck before the officers were within six feet of it (TR. 137). Hickman-Smith denies struggling with the officers, handling marijuana on September 11, 2014, or ever having marijuana in the truck (TR. 139-140). Hickman-Smith denies colliding with another vehicle in the driveway (TR. 141). Hickman-Smith admits he told officers he was in a hurry to help his mother with her fish tank (TR. 141).

The legal analysis is not dependent on a credibility determination, however to the extent a credibility determination is needed the court finds the officers more credible than Hickman-Smith on the issues of the speed of the truck and the odor of marijuana. This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness and consistency with

other testimony.  See *United States v. Anderson*, 688 F.3d 339, 345-46 (8th Cir. 2012).

## LEGAL ANALYSIS

### A.  Traffic Stop

"A traffic stop constitutes a seizure for purposes of the Fourth Amendment and therefore must be supported by probable cause or reasonable suspicion." *United States v. Givens*, 763 F.3d 987, 989 (8th Cir. 2014).  "A traffic violation, no matter how minor, provides an officer with probable cause to stop the driver.  An officer is justified in stopping a motorist when the officer objectively has a reasonable basis for believing that the driver has breached a traffic law." *United States v. Coleman*, 700 F.3d 329, 334 (8th Cir. 2012) (internal quotations and citations omitted).  "Even an officer's incomplete initial observations may give reasonable suspicion for a traffic stop." *United States v. Hollins*, 685 F.3d 703, 705 (8th Cir. 2012).  "An otherwise constitutional traffic stop is not invalidated by the fact that it was mere pretext for a narcotics search." *United States v. Wright*, 512 F.3d 466, 471 (8th Cir. 2008) (internal quotation marks omitted); see also *United States v. Gunnell*, No. 13-3234, slip op. at 4-5 (8th Cir. Jan. 12, 2015).

According to Neb. Rev. Stat. § 60-6,185: "[n]o person shall drive a vehicle on a highway at a speed greater than is reasonable and prudent under the conditions and having regard to the actual and potential hazards existing.  A person shall drive at a safe and appropriate speed when . . . traveling upon any narrow or winding roadway. . . ."  Furthermore,

> [e]xcept when a special hazard exists that requires lower speed for compliance with section 60-6,185, the limits set forth in this section . . . shall be the maximum lawful speeds unless reduced pursuant to subsection (2) of this section, and no person shall drive a vehicle on a highway at a speed in excess of such maximum limits:
>    (a) Twenty-five miles per hour in any residential district . . . ."

Neb. Rev. Stat. § 60-6,186(1).

Generally, "[u]pon all roadways of sufficient width, a vehicle shall be driven upon the right half of the roadway. . . ."  Neb. Rev. Stat. § 60-6,131.  Finally, turning a vehicle or moving right or left upon a roadway without an appropriate signal is a violation of

6

Nebraska statute. **See** Neb. Rev. Stat. § 60-6,161 ("(2) A signal of intention to turn or move right or left when required shall be given continuously during not less than the last one hundred feet traveled by the vehicle before turning.").

In the instant matter, the officers observed Hickman-Smith's vehicle traveling in excess of the posted speed limit and travel and turn, on at least one occasion, without signaling as required by statute. **See** TR. 18-21, 26-27, 41, 79, 143, 147. The officers testified they were initially surprised by the speed of the truck and determined to follow it observing additional traffic violations, including failing to signal a turn into a driveway, as admitted by Hickman-Smith. **See** TR. 18-19, 143. As these actions are in violation of Neb. Rev. Stat. §§ 60-6,131, 60-6,161, 60-6,185, and 60-6,186, the court finds Detective Fortune had probable cause to conduct a traffic stop.

**B.     Detention and Vehicle Search**

Hickman-Smith contends the officers lacked legal justification for the warrantless search of the truck. The government bases the search on probable cause associated with the odor of marijuana and an inventory search in conjunction with towing.

Contemporaneous with a valid traffic stop, an officer may "conduct an investigation that is reasonably related in scope to the circumstances that initially justified the stop." ***United States v. Bracamontes***, 614 F.3d 813, 816 (8th Cir. 2010). In fact, an officer may detain the occupants while completing a number of routine tasks such as computerized checks of the vehicle registration, driver's license, and criminal history. ***United States v. Quintero-Felix***, 714 F.3d 563, 567 (8th Cir. 2013); **see also** ***United States v. Sokolow***, 490 U.S. 1, 7 (1989). Additionally, an officer may inquire about the driver and other occupant's destination, purpose of the trip and whether the police officer may search the vehicle. ***Quintero-Felix***, 714 F.3d at 567; ***United States v. Mendoza***, 677 F.3d 822, 828 (8th Cir. 2012); ***United States v. Olivera-Mendez***, 484 F.3d 505, 511 (8th Cir. 2007) (finding no unreasonable seizure occurred during traffic stop based on probable cause when officer asked three questions about drug possession which were unrelated to the traffic stop).

The existence of reasonable suspicion or consent allows an officer to extend the duration and scope of a traffic stop. ***Quintero-Felix***, 714 F.3d at 567. "If reasonable

7

suspicion exists, officers may briefly detain a vehicle and its occupants to conduct a reasonable investigation." ***United States v. Zamora-Lopez***, 685 F.3d 787, 790 (8th Cir. 2012). "[W]here a police officer observes unusual conduct which leads him reasonably to conclude in light of his experience that criminal activity may be afoot, the officer may briefly stop the suspicious person and make reasonable inquiries aimed at confirming or dispelling his suspicions." ***Minnesota v. Dickerson***, 508 U.S. 366, 372-73 (1993) (**quoting** ***Terry v. Ohio***, 392 U.S. 1, 30 (1968)) (internal quotation marks omitted); **see** ***United States v. McCarty***, 612 F.3d 1020, 1025 (8th Cir. 2010) (noting circumstances may suggest "suspicion was reasonably warranted and [officer] was justified in expanding the traffic stop to ask [the suspect] about the presence of drugs in the car").

      The reasonable suspicion necessary to justify an investigatory stop must include "specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." ***Terry v. Ohio***, 392 U.S. 1, 21 (1968); **see** ***United States v. Allen***, 705 F.3d 367, 370 (8th Cir. 2013). "While 'reasonable suspicion' must be more than an inchoate 'hunch,' the Fourth Amendment only requires that police articulate some minimal, objective justification for an investigatory stop." ***United States v. Farnell***, 701 F.3d 256, 261 (8th Cir. 2012). "The standard is less difficult to meet than the probable cause standard required for arrests." ***United States v. Long***, 532 F.3d 791, 795 (8th Cir. 2008).

      The court gives law enforcement officers "substantial latitude in interpreting and drawing inferences from factual circumstances." ***United States v. Winarske***, 715 F.3d 1063, 1067 (8th Cir. 2013). This is because "the police possess specialized law enforcement experience and thus may 'draw reasonable inferences of criminal activity from circumstances which the general public may find innocuous.'" ***United States v. Mendoza***, 421 F.3d 663, 667 (8th Cir. 2005). Accordingly, "[w]hether [the officers'] suspicions are reasonable is assessed from the point of view of trained law enforcement officers based on the totality of the circumstances known to the officers at the relevant time." ***Zamora-Lopez***, 685 F.3d at 790.

      The officers initially attempted to conduct a traffic stop. The traffic stop provided Detective Fortune the authority to temporarily detain Hickman-Smith and initiate a

limited investigation. Hickman-Smith left his vehicle and either struggled with Detective Fortune or merely failed to follow initial commands to stop and stay in the vehicle. Nevertheless, the officers immediately smelled the odor of raw marijuana on Hickman-Smith and emanating from his vehicle. These incidents justified extending the scope of the stop. The officers identified Hickman-Smith, determined his vehicle was parked in a neighbor's driveway, and were unable to recover the keys.

The Fourth Amendment prohibits "unreasonable searches and seizures." U.S. Const. amend. IV. "[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." **Katz v. United States**, 389 U.S. 347, 357 (1967) (footnotes omitted). "One such exception is the automobile exception, which allows law enforcement to 'search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity.'" **United States v. Brown**, 634 F.3d 435, 438 (8th Cir. 2011) (**quoting United States v. Davis**, 569 F.3d 813, 817 (8th Cir. 2009)); see **United States v. Stringer**, 739 F.3d 391, 395 (8th Cir. 2014). "Probable cause exists where there is a 'fair probability that contraband or evidence of a crime will be found in a particular place.'" **United States v. Donnelly**, 475 F.3d 946, 954 (8th Cir. 2007) (**quoting Illinois v. Gates**, 462 U.S. 213, 238 (1983)). A probable cause determination is based on the totality of the circumstances. See **United States v. Keys**, 721 F.3d 512, 518 (8th Cir. 2013).

The officers' detection of marijuana provided the officers probable cause to search the defendant's vehicle and warranted a further extension and expansion of the stop beyond the scope of the initial traffic stop. See **United States v. Beard**, 708 F.3d 1062, 1066 (8th Cir. 2013) (concluding a vehicle search was "lawful under the automobile exception" when trooper "smelled raw marijuana immediately after [the defendant] rolled down his car window"); **United States v. Peltier**, 217 F.3d 608, 610 (8th Cir. 2000) (stating that "the smell of marijuana gave the deputy probable cause to search" the defendant's vehicle); **United States v. McCoy**, 200 F.3d 582, 584 (8th Cir. 2000) (finding an officer had probable cause to search a vehicle, in part, because the defendant smelled of burnt marijuana); **United States v. Neumann**, 183 F.3d 753, 756

(8th Cir. 1999) (stating "detection of the smell of burnt marijuana . . . gave [the officer] probable cause to search the entire vehicle for drugs"). The defendant's attempt to flee and his struggle with the officers, or mere failure to comply with commands provided additional circumstances supporting reasonable suspicion. Under the facts present, a reasonable person could believe there was a fair probability contraband or evidence of a crime would be found in the defendant's vehicle.

Independently of the search justified by probable cause, the officers' search of the truck is justified by an inventory search. The officers acted reasonably with regard to the standard limits provided in the OPD towing and inventory policies. **See** Exs. 6 and 7. There is no evidence the officers knew Hickman-Smith had permission to park his vehicle in the neighbor's driveway, despite that the vehicle was parked in a manner to obstruct the driveway and the officers lacked access to the keys. In any event, "when there is a valid reason to impound a vehicle, [t]he presence of an investigative motive does not invalidate an otherwise valid inventory search." ***United States v. Arrocha***, 713 F.3d 1159, 1164 (8th Cir. 2013) (alteration in original). The crack cocaine found in the truck provided the officers independent justification to search Hickman-Smith and the remainder of the truck. **See *United States v. McCarty***, 612 F.3d 1020, 1026 (8th Cir. 2010); ***United States v. Newell***, 596 F.3d 876, 880 (8th Cir. 2010) (noting "[s]eeing evidence of a crime provided probable cause to arrest").

## CONCLUSION

Hickman-Smith's Motion to Suppress Evidence should be denied. Finding credible evidence, as the court does, that Hickman-Smith committed several traffic infractions and both he and his vehicle emanated the odor of raw marijuana, Hickman-Smith's conduct and the attendant circumstances supplied the officers with probable cause to stop, then conduct a warrantless search of the truck. Alternatively, taking the uncontroverted evidence, that Hickman-Smith committed a traffic violation when he turned into a driveway belonging to his neighbor and leaving his vehicle blocking the driveway without the keys, justifies the officers' stopping and towing the vehicle, which resulted in a permissible inventory search revealing crack cocaine. Accordingly,

**IT IS RECOMMENDED TO SENIOR JUDGE JOSEPH F. BATAILLON** that:

Hickman-Smith's Motion to Suppress Evidence (Filing No. 14) be denied.

## ADMONITION

Pursuant to NECrimR 59.2 any objection to this Order and Findings and Recommendation shall be filed with the Clerk of the Court within fourteen (14) days after being served with a copy of this Order and Findings and Recommendation. Failure to timely object may constitute a waiver of any such objection. The brief in support of any objection shall be filed at the time of filing such objection. Failure to file a brief in support of any objection may be deemed an abandonment of the objection.

Dated this 15th day of January, 2015.

BY THE COURT:

s/ Thomas D. Thalken
United States Magistrate Judge