IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>TIMOTHY HICKMAN-SMITH,<br><br>    Defendant. | 8:14CR367<br><br>**MEMORANDUM AND ORDER** |

This matter is before the Court on the objections, Filing No. 41, to the findings and recommendation, Filing No. 40, of the magistrate judge. The magistrate judge denied a motion to suppress, Filing No. 14, filed by the defendant. Defendant is charged in the Indictment with possession with the intent to distribute "crack" cocaine in violation of 21 U.S.C. § 841(a)(1) and (b)(1). He sought to suppress evidence seized during his detention on a driveway at XXXX N. 29th Street in Omaha, Nebraska and the resulting search of his locked vehicle by the Omaha Police. The magistrate judge conducted a hearing and received evidence into the record.[1] The magistrate judge recommended that the defendant's motion to suppress be denied. Pursuant to 28 U.S.C. § 636(b)(1)(A), the court has conducted a de novo determination of those portions of the F&R to which the defendant objects, including the transcript of the suppression hearing. *United States v. Lothridge*, 324

---

[1] The court heard the testimony of OPD Detectives Ken Fortune (Detective Fortune) and Roman Hutton (Detective Hutton), and Sergeant Keith Williamson (Sergeant Williamson), Angela Harder (Ms. Harder), and defendant Hickman-Smith. The court also received into evidence: a Google Maps map overview (Ex. 1), photographs of houses (Exs. 2-5), OPD tow policy (Ex. 6), OPD inventory policy (Ex. 7), a chain of custody report (Ex. 8), and a photograph of the front of a vehicle (Ex. 103). A transcript (TR.) of the hearing was filed on December 18, 2014 (Filing No. 36).

F. 3d 599, 600-01 (8th Cir. 2003). The Court finds the magistrate judge's findings and recommendations should be adopted as set forth herein, with one exception.[2]

**BACKGROUND**

The Court has carefully reviewed the facts and concludes that the magistrate judge is correct in his recitation of the same. Accordingly, the Court adopts them and incorporates them into this memorandum and order as follows:

> Detective Fortune has been an officer with the OPD for seven years, with the last three years assigned to the North Gang Suppression Unit (TR. 11). Detective Fortune's duties include enforcing traffic laws, patrolling, and investigating criminal activities involving gang members, including common crimes, narcotics crimes, and weapons offenses (TR. 11-12, 61, 63). Detective Fortune has participated in hundreds of narcotics investigations, including approximately twenty to thirty distribution or trafficking cases (TR. 12-13). Through his training and experience, Detective Fortune is familiar with the appearance and smell of raw and burnt marijuana (TR. 14-15). Detective Fortune has also received academy and field training about how to visually estimate the speed of vehicles (TR. 16). Detective Fortune was certified by having to estimate the speed of a hundred vehicles corroborated by radar, although he has not re-certified since being a member of the gang unit (TR. 16). Detective Hutton has been an officer with the OPD for ten years, the last four years in the North Gang Suppression Unit (TR. 76-77).
> On September 11, 2014, at approximately 9:00 p.m., Detectives Fortune, Hutton, and Keri Orozco were on duty in an unmarked police vehicle equipped with emergency lights (TR. 17, 79). The detectives were wearing police raid vests marked with police insignia and duty belts containing tools, flashlights, firearms, and handcuffs (TR. 17-18). The detectives were traveling southbound on 27th Avenue a block or so north of Laurel Avenue (TR. 18). Detective Fortune observed a white pickup truck traveling west on Laurel Avenue (TR. 18). Detective Fortune testified the speed of the truck is what initially attracted his attention and estimated the truck was going at least double the posted speed limit of 25 miles per hour (TR. 18, 26-27, 79). The detectives determined the speed of the vehicle warranted further investigation and pursued the truck (TR. 18-19, 79). Without signaling a turn, the truck turned left onto 29th Street by cutting the corner and traveling southbound in the northbound lane for approximately one hundred feet (TR. 19-20, 41, 79). Detective Fortune estimated the truck was traveling at least forty miles per hour at that time (TR. 19). The truck abruptly turned, without signaling, into the driveway at 5618 North 29th Street, at which time Detective Fortune activated the emergency lights on the police vehicle (TR. 20-21, 26). The

---

[2] See page 7 of this Memorandum and Order.

truck came to a rest against a Mustang already parked in the driveway, but did not cause any damage to either vehicle (TR. 21, 42, 81, 90-91). The driver of the truck immediately exited the truck (TR. 21, 24). The truck had no other occupants (TR. 28).

Detective Fortune exited the police vehicle and loudly said, "back in the car" (TR. 24). The driver did not respond (TR. 24, 81). Detective Fortune identified the driver for the first time during the encounter as Hickman-Smith (TR. 24). Detective Fortune recognized Hickman-Smith from previous encounters including stops stemming from traffic violations, some of which Detective Fortune smelled marijuana in the vehicle, but a subsequent search did not reveal marijuana (TR. 58). Prior to the stop, Detective Fortune had information Hickman-Smith was suspected of gang and illegal drug and weapons activities (TR. 61, 63).

Detective Fortune again, more loudly, said, "back in the car" (TR. 24). Detective Fortune saw Hickman-Smith's hands were not a threat but he failed to respond to commands (TR. 24). When Hickman-Smith closed the truck's door, Detective Fortune smelled the truck's air draft, which contained the odor of raw marijuana (TR. 24, 39, 94). Hickman-Smith turned toward the house located at 5616 North 29th Street and took two running steps away from the officers (TR. 24-25, 29, 31). Detective Fortune ran after Hickman-Smith (TR. 29). Approximately ten feet from the truck, Detective Fortune grabbed Hickman-Smith's right arm, which he immediately pulled away (TR. 29). Detective Fortune grabbed the right arm again more firmly and said, "stop resisting and give me your other hand. Give me your other hand" (TR. 30). Hickman-Smith continued to ignore the commands, Detective Fortune said, "stop resisting or I'm going to have to put you to the ground" (TR. 30). As Hickman-Smith attempted to turn, the two men went in a circle struggling (TR. 30). Detective Fortune was able to talk Hickman-Smith into being handcuffed (TR. 30). Detective Fortune detected the odor of raw marijuana on Hickman-Smith's clothing when Detective Fortune placed Hickman-Smith in handcuffs and while standing with him (TR. 30, 34, 36, 39, 65). Detective Hutton also smelled the odor of raw marijuana on Hickman-Smith (TR. 81-82, 100-101, 106). Hickman-Smith was placed under arrest for the driving violations (TR. 38-39).

Without provocation, Hickman-Smith said, "You're not searching the car" (TR. 30). Detective Fortune responded, "yes, we are because I smell marijuana on your person" (TR. 30). Hickman-Smith explained he had been in a hurry to help his mom with an emergency regarding a fish tank (TR. 31).

After Hickman-Smith was placed in handcuffs, a male came from behind the house at 5616 North 29th Street and Hickman-Smith yelled, "Maynard, Maynard" (TR. 31). The man said, "hey, what is going on?" (TR. 32). In response, Hickman-Smith asked, "hey, is mom okay" (TR. 32). The man, later identified as Jermaine, looked confused and said, "yeah" (TR. 32). An older woman, who Hickman-Smith identified as his mother, came to the entryway of the same house (TR. 32). Detective Fortune asked her if there was an emergency and she said, "yes" (TR. 33). Detective Fortune asked, "what is going on?" (TR. 33). The woman responded, "Oh, there was a death

in the family" (TR. 33). Four other bystanders were observing the incident and told the woman not to talk to the officers and to go back into the house, which she did (TR. 33).

Detective Fortune asked Hickman-Smith for the keys to the truck to facilitate a search (TR. 34-35). Hickman-Smith stated the keys had been lost during the struggle (TR. 35). Hickman-Smith told Detective Hutton he had thrown the keys into the grass (TR. 81). After searching the area without finding the keys, the officers called another officer to open the truck without the keys (TR. 35-36). The officers decided to tow the truck because it was parked in the neighbor's driveway in such a way to block the driveway and the keys were not found (TR. 66-67, 85-86, 102).

After a search of the truck, Detective Hutton found three seeds, which appeared to be marijuana seeds, on the floorboard (TR. 37-38, 82-83, 87-88; Ex. 8). Detective Hutton also smelled the odor of raw marijuana in the truck (TR. 82). The officers also found eighteen separately wrapped packages of crack cocaine inside a Walmart bag, which was inside a Jimmy Dean sandwich box, which was inside a Nike shoe box on the passenger seat of the truck (TR. 38, 84-85). Detective Fortune found $175 in Hickman-Smith's right front pocket and $193 in Hickman-Smith's lower right pants leg pocket (TR. 39). No marijuana or marijuana paraphernalia were found on Hickman-Smith (TR. 64).

Sergeant Williamson arrived at the location of the traffic stop after the search had begun (TR. 115). Sergeant Williamson has been an officer with OPD for fourteen years and a sergeant for seven years (TR. 113). Sergeant Williamson is currently assigned to the North Gang Suppression Unit (TR. 113). Sergeant Williamson testified that had the truck not been searched based on the odor of marijuana it would have been towed based on the circumstances and location of the truck (TR. 116-117). Specifically, the truck, without keys, was blocking a driveway that did not belong to the truck's owner (TR. 116-117).[3] Sergeant Williamson testified OPD's tow policy authorized OPD to tow vehicles committing a parking violation (TR. 118). Additionally, the tow policy authorized officers to search containers in the subject vehicle (TR. 119).

Ms. Harder has been employed by the OPD crime lab since March of 2003 (TR. 123). Ms. Harder is a senior crime lab technician and a specialist in firearms and tool marks (TR. 123). Ms. Harder also has duties examining crime scenes (TR. 123). Ms. Harder arrived at the location of the traffic stop at 9:55 p.m., after the search had begun (TR. 126-127). Ms. Harder assisted with taking photographs and collecting evidence from the truck for approximately one-half hour (TR. 124). Ms. Harder observed the Nike shoe box with its contents and field tested one of the smaller bags opining it contained cocaine (TR. 125). Ms. Harder does not recall smelling the odor of marijuana in the truck and was not given any seeds to examine (TR. 126).

---

[3] The Court notes, however, that defendant argued that his mother lived at that address and shared the driveway with her neighbor. Defendant testified that he had been parking there for ten years. However, it does not appear that defendant told the officers this information.

4

>     Hickman-Smith denies ever driving 65 miles per hour in the residential area indicated by the detectives (TR. 134, 136-137). Hickman-Smith testified he "couldn't been doing no more than 25 or 30" (TR. 147). Hickman-Smith also denies making any turns without signaling (TR. 137). However, Hickman-Smith admits he failed to use his turn signal when turning into the driveway (TR. 143). To explain his driving on the wrong side of the roadway, Hickman-Smith describes the area as essentially one-lane roads with cars parked on one side (TR. 134-135). Additionally, Hickman-Smith testified he has been parking his vehicles in the driveway next to his mother's house for approximately ten years with the neighbor's permission (TR. 135). Hickman-Smith testified he closed the door to the truck before the officers were within six feet of it (TR. 137). Hickman-Smith denies struggling with the officers, handling marijuana on September 11, 2014, or ever having marijuana in the truck (TR. 139-140). Hickman-Smith denies colliding with another vehicle in the driveway (TR. 141). Hickman-Smith admits he told officers he was in a hurry to help his mother with her fish tank (TR. 141).
>     The legal analysis is not dependent on a credibility determination, however to the extent a credibility determination is needed the court finds the officers more credible than Hickman-Smith on the issues of the speed of the truck and the odor of marijuana. This determination is made based upon each of the witnesses' demeanor during the hearing, intelligence, memory, motives, general reasonableness and consistency with other testimony. *See United States v. Anderson,* 688 F.3d 339, 345-46 (8th Cir. 2012).

Filing No. 40, 2-6. The magistrate then found that the traffic stop was valid based on the observation by the officers related to speed and failure to signal; the search of the vehicle was valid based on the odor of marijuana which gave the officers probable cause to search; defendant's behavior resisting the commands of law enforcement and the struggle with the officers, coupled with the smell of marijuana in the vehicle justified further detention; and that the officers had an independent right to search the vehicle based on the fact they believed it was illegally parked, that they had a right to tow the vehicle, and thus a right to conduct an inventory search.

**DISCUSSION**

Defendant objects arguing that the magistrate judge ignored: salient facts; that the driveway was shared by his Mom and her neighbor and defendant parked there for the previous 10 years; that the crime scene investigator did not smell marijuana; that these

5

same officers had stopped defendant in the past, allegedly smelled marijuana, but never found any of the same; that the gang unit was out to get the defendant; and that the alleged impact of defendant's car to another in the driveway showed no damage.  Thus, based on these arguments, defendant contends there is no basis for finding the evidence was legally acquired.

The Court has carefully reviewed the legal and factual analysis of the magistrate judge.  The Court finds the magistrate judge had to make certain credibility determinations between the officers and the defendant.  The Court agrees with these credibility findings, except as hereinafter set forth.  Further, it is clear that the officers had probable cause to make the traffic stop, even when the infractions are minor.  "The decision to stop an automobile is reasonable where the police have probable cause to believe that a traffic violation has occurred."  United States v. Adler, 590 F.3d 581, 583 (8th Cir. 2009). Following the stop, the officers had a right to detain the defendant and conduct their routine investigation.  United States v. Barragan, 379 F.3d 524, 528 (8th Cir. 2004).  The magistrate judge credited the testimony of the officers that they smelled raw marijuana.  The "automobile exception" permits the warrantless search of a vehicle if police "had probable cause to believe the vehicle contained contraband or other evidence of a crime before the search began."  United States v. Wells, 347 F.3d 280, 287 (8th Cir. 2003).  The odor of raw marijuana detected in a vehicle during an investigative stop gives law enforcement probable cause to search the vehicle and its containers for drugs.  United States v. Peltier, 217 F.3d 608, 610 (8th Cir. 2000).  The Court finds the evidence is tenuous in this regard since no significant amount of marijuana was found, no other officers detected the odor, and particularly given that this happened on previous occasions.  However, the Court finds that the officers had a right to stop and ultimately arrest defendant. Based on the fact that the

6

officers believed the defendant parked on private driveway other than his own following a lawful stop, blocking in other vehicles, and whereas the defendant did not tell the officers otherwise, the evidence at issue in this motion would have been discovered in any event during the inventory search. *United States v. Allen,* 713 F.3d 382, 387 (8th Cir. 2013). Accordingly, the Court will adopt the findings and recommendation of the magistrate judge as set forth herein.

THEREFORE, IT IS ORDERED THAT:

1. Defendant's motion to suppress, Filing No. 14, is denied;

2. Defendant's objections, Filing No. 41, are overruled; and

3. The findings and recommendation of the magistrate judge, Filing No. 40, is adopted in its entirety.

Dated this 24th day of February, 2015

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge