IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

UNITED STATES OF AMERICA,

Plaintiff,

vs.

TIMOTHY HICKMAN-SMITH,

Defendant.

**8:14CR367**

**MEMORANDUM AND ORDER**

This matter is before the Court on the defendant's motion for compassionate release for sentence reduction pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), Filing No. 121. The Court stayed this motion pending proof of exhaustion. Filing No. 122. The Court additionally appointed the Public Defender's office to represent defendant. *Id.* Thereafter, on June 5, 2020, counsel for the defendant moved for an order of compassionate release investigation, Filing No. 124, which this Court granted, Filing No. 125. Defendant requests that this Court reduce his sentence to early home confinement. The United States Probation Office completed its investigative report. Filing No. 130. The Defendant's briefing was completed on July 6, 2020. The Probation report was filed on July 15, 2020. The Government responded to the defendant's motion on September 2, 2020. Filing No. 134.

Defendant was sentenced to serve 120 months in prison for possession with intent to distribute. That sentence constituted the statutory minimum for the offense of

1

conviction, which was in excess of the minimum suggested by his guidelines' calculation. He has served a majority of the sentence already. He has a criminal history category of II. It appears that he has less than four years left on this sentence and would be eligible for placement in the reentry programming in less than 3 years. 18 U.S.C. §3624(c) (1). This is defendant's only felony conviction. He is now 31 years of age.

**DISCUSSION**

The First Step Act amended numerous provisions of the U.S. Code to promote rehabilitation of prisoners and unwind decades of mass incarceration. Cong. Research Serv., R45558, The First Step Act of 2018: An Overview 1 (2019). Congress designed the provision at issue here, 18 U.S.C. § 3582(c)(1)(A), for "Increasing the Use and Transparency of Compassionate Release." § 603(b), 132 Stat. at 5239. Section 3582(c)(1)(A) allows defendants, for the first time, to petition district courts directly for compassionate release. *Id.* Compassionate release provides a path for defendants with "extraordinary and compelling reasons" to leave prison early. § 3582(c)(1)(A)(i). Such a sentence reduction must comply with the 18 U.S.C. § 3553(a) factors and "applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Pursuant to § 3582(c)(1)(A), a defendant may (after exhausting his or her administrative remedies) move for reduction of his or her term of imprisonment based upon "extraordinary and compelling reasons." The Court, after considering the factors enumerated in 18 U.S.C. § 3553(a)[1], may grant the motion if extraordinary and

---

[1] The statute states: (1) in any case--
(A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the

compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.[2]  Accordingly, an initial review of the defendant's claim will involve these inquiries:

1.  Has the defendant exhausted administrative remedies?

2.  Has the defendant identified extraordinary and compelling reasons for reducing his or her term of imprisonment?

3.  Would application of the § 3553(a) factors permit reducing the defendant's sentence if those extraordinary and compelling reasons were substantiated?

4.  Ensure that any reduction is consistent with applicable policy statements.

18 U.S.C. § 3582(c)(1)(A).

Already "tinderboxes for infectious disease," prisons now are even more dangerous than we typically accept.  *United States v. Rodriguez*, No. 2:03-CR-00271-AB-1, 2020 WL 1627331, at *1 (E.D. Pa. Apr. 1, 2020).  The Attorney General has directed the BOP to consider increased use of home confinement for at-risk inmates. Memorandum from U.S. Att'y Gen. William Barr to Dir. of Bureau of Prisons (Mar. 26, 2020).

A.  *Exhaustion of Remedies*

Defendant made a request to the warden for compassionate release on April 3, 2020 and again on April 6, 2020, and thirty days has expired since that date.  *See United*

---

unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that--

(i) extraordinary and compelling reasons warrant such a reduction; . . .

***** and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A).

*States v. Brown*, ___ F.Supp.3d ___, 2020 WL 2091802, at *5 (S.D. Ia. Apr. 29, 2020) ("Defendant . . . satisfied the exhaustion requirement's text and purpose [when] [h]e gave the BOP the first chance to review his circumstances and let thirty days pass before proceeding to court."). Accordingly, the Court has jurisdiction over this case.

B.  *Medical impairment*

The government contends that the defendant does not have medical conditions that entitle him to a compassionate release. First, the government argues that defendant's hypertension is recent and is controlled by medication (when he is compliant); next, the government says as to defendant's obesity, the medical staff recommended that he go on a diet and exercise; and his sleep apnea has been assessed as resolved.

The Court finds that defendant's physical and medical vulnerability to COVID-19 are extraordinary and compelling reason for a change in defendant's sentence.[2]  *See e.g.*, U.S.S.G. § 1B1.13 comment. n.1 (A)-(C). As Judge Gerrard recently observed in Jenkins, there is currently "no 'applicable' policy statement cabining the Court's discretion to act under § 3582(c)(1)(A)." *United States v. Jenkins*, 2020 WL 2814437, at *3 (D. Neb. May 26, 2020); *see also United States v. Redd*, 2020 WL 1248493, at *5 (E.D. Va. March 16, 2020) ("there does not currently exist, for the purposes of satisfying the First Step Act's 'consistency' requirement, an 'applicable policy statement.'"); *United States v. Brown*, 411 F. Supp. 3d 446, 449 (S.D. Iowa 2019) (canvassing cases and holding that courts, rather than the outdated policy statements, should determine whether a defendant qualifies for compassionate release); *United States v. Beck*, 425 F.

---

[2] *See* defendant's medical records at Filing No. 128-3.

Supp.2d 573, 579 (M.D.N.C. June 28, 2019) ("While the old policy statement provides helpful guidance, it does not constrain the Court's independent assessment of whether 'extraordinary and compelling reasons' warrant a sentence reduction under § 3582(c)(1)(A)(i).").

COVID-19 is clearly a global pandemic that presents extraordinary and compelling release for certain prisoners.  It is unprecedented.  COVID-19 appears to pose a particular risk for individuals with certain existing health conditions. These include a compromised immune system, obesity, heart disease, hypertension, chronic lung disease, diabetes mellitus, and asthma. Groups at Higher Risk for Severe Illness, Ctrs. for Disease Control & Prevention (April 17, 2020), https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/groups-at-higher-risk.html.

Hickman-Smith describes the circumstances at his prison in FCI Safford as:  no social distancing; no cells, just warehousing; no dividers between bunks that are only 2 feet apart and are lined up in rows; 5 to 15 inmates are within feet of each other when eating; the toilets and showers are not conducive to distancing; there is a lack of sufficient soap in some dispensers; and inmates who are working are coming back into the general population at the end of the day. At the time of the motion, defendant was on a CPAP machine that had been placed on the floor pushing dirty air up from the ground, with inmates stepping on the cords.[3]  Further, Arizona is now known for record numbers of COVID-19 infections and deaths.

From a medical perspective, defendant is obese.  This is statistically a high risk for

---

[3] Apparently, Hickman-Smith is no longer permitted to use the CPAP machine, as the BOP cannot find a suitable place to put it.

COVID-19 complications. He also has allergies, essential primary hypertension, and sleep apnea. Filing No. 128, Exhibit 3, Medical Records, at 16, 27. All of these factors increase his risk of contracting COVID-19. The CDC study of those hospitalized in March of 2020 showed "[a]pproximately 90% of hospitalized patients identified through COVID-NET had one or more underlying conditions, the most common being obesity, hypertension, chronic lung disease, diabetes mellitus, and cardiovascular disease."[4] Obesity was considered to be an extraordinary and compelling factor in favor of release in the following cases: *United States v. Handy*, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Barber*, 6:18-cr-00446-AA, 2020 WL 2404679 (D. Or. May 12, 2020); *United States v. Hunt*, 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020), among many others.

A number of courts have considered hypertension to be a significant factor in granting compassionate release petitions and this court should do so as well. *See United States v. Handy*, 3:10-cr-00128-RNC-8, 2020 WL 2487371 (D. Conn. May 14, 2020); *United States v. Mattingly*, 6:15-cr-00005-NKM-JCH, 2020 WL 2499707 (W.D. Va. May 14, 2020); *United States v. Lopez*, 1:18-cr-02846-MV-1, 2020 WL 2489746 (D. N.M. May 14, 2020); *United States v. Gutman*, 1:19-cr-00069-RDB-2, 2020 WL 2467435 (D. Md. May 13, 2020); *United States v. Sedge*, 1:16-cr-00537-KAM, 2020 WL 2475071 (E.D. N.Y. May 13, 2020), among many others.

Likewise, sleep apnea is known to decrease oxygen levels and affect normal heart rhythms and higher levels of C-reactive protein. https://www.mayoclinic.org/diseases-

---

[4] Hospitalization Rates and Characteristics of Patients Hospitalized with Laboratory-Confirmed Coronavirus Disease 2019.
https://www.cdc.gov/mmwr/volumes/69/wr/mm6915e3.htm?s_cid=mm6915e3_w

conditions/obstructive-sleep-apnea/symptoms-causes/syc-20352090.  The use of a C-pap machine can be dangerous to self and others, as it must be cleaned regularly, and it can generate aerosols.[5]  A number of courts have found this increased risk to likewise be extraordinary and compelling reasons for reducing an inmate's sentence.  *See United States v. Hunt*, 2:18-cr-20037-DPH-DRG, 2020 WL 2395222 (E.D. Mich. May 12, 2020); *United States v. Amarrah*, 5:17-cr-20464-JEL-EAS-1, 2020 WL 2220008 (E.D. Mich. May 7, 2020); *United States v. Rivera*, 1:86-cr-01124-JFK-4, 2020 WL 2094094 (S.D. N.Y. May 1, 2020); *United States v. Delgado*, 3:18-cr-00017-VAB, 2020 WL 2464685 (D. Conn. Apr. 30, 2020), and many others.

### C. 18 U.S.C. § 3582(c)(1)(A)(i) and § 3553(a) factors

Finally, the Court must consider if compassionate release comports with any Applicable § 3553(a) factors.  *See also* § 3582(c)(1)(A).  When reviewing the § 3553(a) relevant factors, the balance of those factors support a sentence of home confinement. The Court has already discussed the COVID-19 health factors herein that severely increases the risk for severe illness for the defendant. Likewise, the prison facility is overcrowded and is unable to adequately protect defendant, given his health factors, from COVID-19.  Further, the Court finds that such conditions are not "just" under § 3553(a)(2)(A).  In addition, the PSR showed no history of violence or assaults.  Defendant is one of the low-risk populations, and those tend to have higher density and more commingling.  The defendant does not appear to pose a threat to the public, and Hickman-Smith has served the majority of his sentence.

---

[5] https://aasm.org/covid-19-resources/covid-19-faq/

The Court believes that prison incarceration is unnecessary "to protect the public from further crimes of the defendant." § 3553(a)(2)(C).  "According to BOP records, Mr. Hickman-Smith has completed vocational training programs for Retail Management, Building Construction, and Pre-Apprenticeship Carpentry, and participated in two Industrial Housekeeping Apprenticeships.  He has also taken classes in parenting, money management, employment resume and interviewing, stock investing, breaking habits, anger management, and criminal thinking." Filing No. 130, PSR at 3.  Also, there is very little training going on in the prisons due to COVID-19, and thus it is difficult for defendant to further rehabilitate himself.  Defendant indicates he has a release plan to live with his family.  The probation office has confirmed that he can live with his brother.  Defendant also states that he has some potential job prospects.  The probation officer indicated that if this motion for compassionate release is granted, the release address would be acceptable, as long as firearms are removed, and alcohol is secured.  For these reasons, the Court finds the factors favor granting defendant compassionate release.

**THEREFORE, IT IS ORDERED THAT:**

1. For the reasons stated herein, defendant's Motion for compassionate release, Filing No. 121, is GRANTED.

2.  IT IS FURTHER ORDERED THAT the defendant shall be released from Bureau of Prisons Custody on September 30, 2020.

3. IT IS FURTHER ORDERED THAT upon release, the defendant shall report to the United States Probation and Pretrial Services Office for the District of Nebraska, immediately upon his release.

4. IT IS FURTHER ORDERED THAT no guns shall be present in the defendant's place of residence, nor shall alcohol be accessible to the defendant.

5. IT IS FURTHER ORDRED THAT the Defendant remain in self-quarantine for fourteen days upon returning home. He shall comply with national, state, and local orders regarding COVID-19.

Dated this 18th day of September, 2020.

BY THE COURT:

s/ Joseph F. Bataillon
Senior United States District Judge